# EXHIBIT 1

Person/Attorney Filing: Troy Foster
Mailing Address: 902 W Mcdowell Rd
City, State, Zip Code: Phoenix, AZ 85007
Phone Number: (602)461-7991
E-Mail Address: tfoster@thefosterlaw.com
[ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 017229, Issuing State: AZ

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

| | |
|---|---|
| Sandy Frost<br>Plaintiff(s),<br>v.<br>State Farm Mutual Automobile<br>Insurance Company<br>Defendant(s). | Case No.<br><br>**SUMMONS** |

To: State Farm Mutual Automobile Insurance Company

**WARNING: THIS AN OFFICIAL DOCUMENT FROM THE COURT THAT
AFFECTS YOUR RIGHTS.  READ THIS SUMMONS CAREFULLY. IF YOU DO
NOT UNDERSTAND IT, CONTACT AN ATTORNEY FOR LEGAL ADVICE.**

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers were
   served on you with this Summons.

2. If you do not want a judgment taken against you without your input, you must file an
   Answer in writing with the Court, and you must pay the required filing fee. To file your
   Answer, take or send the papers to Clerk of the Superior Court, 201 W. Jefferson,
   Phoenix, Arizona 85003 or electronically file your Answer through one of Arizona's
   approved electronic filing systems at http://www.azcourts.gov/efilinginformation.
   Mail a copy of the Answer to the other party, the Plaintiff, at the address listed on the top
   of this Summons.
   Note: If you do not file electronically you will not have electronic access to the documents
   in this case.

3. If this Summons and the other court papers were served on you within the State of
   Arizona, your Answer must be filed within TWENTY (20) CALENDAR DAYS from the
   date of service, not counting the day of service. If this Summons and the other court papers
   were served on you outside the State of Arizona, your Answer must be filed within
   THIRTY (30) CALENDAR DAYS from the date of service, not counting the day of
   service.

Requests for reasonable accommodation for persons with disabilities must be made to the court by parties at least 3 working days in advance of a scheduled court proceeding.

GIVEN under my hand and the Seal of the Superior Court of the State of Arizona in and for the County of  MARICOPA

AZturboCourt.gov Form Set #5308722

Person/Attorney Filing: Troy Foster
Mailing Address: 902 W Mcdowell Rd
City, State, Zip Code: Phoenix, AZ 85007
Phone Number: (602)461-7991
E-Mail Address: tfoster@thefosterlaw.com
[ □ ] Representing Self, Without an Attorney
(If Attorney) State Bar Number: 017229, Issuing State: AZ

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

IN AND FOR THE COUNTY OF MARICOPA

Sandy Frost
Plaintiff(s),                                   Case No.
v.
State Farm Mutual Automobile
Insurance Company                               **CERTIFICATE OF**
Defendant(s).                                   **COMPULSORY ARBITRATION**

I certify that I am aware of the dollar limits and any other limitations set forth by the
Local Rules of Practice for the Maricopa County Superior Court, and I further certify that
this case IS NOT subject to compulsory arbitration, as provided by Rules 72 through 77 of
the Arizona Rules of Civil Procedure.

RESPECTFULLY SUBMITTED this

By: Troy Foster /s/
Plaintiff/Attorney for Plaintiff

Troy P. Foster
Megan N. Weides
**The Foster Group, PLLC**
902 W. McDowell Road
Phoenix, Arizona 85007
Tel: 602-461-7990
tfoster@thefosterlaw.com
mweides@thefosterlaw.com
*Attorneys for Plaintiff*

## IN THE SUPERIOR COURT OF ARIZONA

## IN THE COUNTY OF MARICOPA

| | |
|---|---|
| Sandy Frost, a married woman, | Case No.:  CV2021-000326 |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| | **(Jury Trial Demanded)** |
| State Farm Mutual Automobile Insurance Company, a foreign corporation; | |
| Defendant. | |

For her Complaint against State Farm Mutual Automobile Insurance Company ("the Company"), Ms. Sandy Frost ("Plaintiff") alleges as follows:

### Introduction

"Like a good neighbor, State Farm is there." For a Company that prides itself on being there to help when things go wrong, it completely failed Ms. Sandy Frost. Ms. Frost dedicated nearly twenty (20) years working there. She excelled in her job and truly enjoyed her work. All of that changed when Ms. Frost was nearly killed in a car accident and could no longer perform her job as she had before.

Defendant terminated Ms. Frost after she requested an accommodation and her supervisor began targeting Ms. Frost by treating her differently than her peers and singling her out. In fact, after refusing to engage in the interactive process and denying her accommodation request, the Defendant told Ms. Frost that she was being terminated under

1

the guises of performance issues.  Notably, these alleged performance issues were related to Ms. Frost's accommodation request for her qualifying disability.

These are precisely the circumstances the ADA was contemplated to assist and protect employees like Ms. Frost.  Giving her additional training or materials, keeping her job available, not terminating her health insurance and other benefits – so that Ms. Frost could focus on staying alive and treating her disabilities.  Instead, Defendant ignored these laws, and deprived Ms. Frost of these statutory protections.

## Background Allegations and Jurisdiction

1.      At all times relevant to this Complaint, Ms. Frost resided in Arizona and is a citizen of the State of Arizona.

2.      At all times relevant to this Complaint, Ms. Frost worked for the Company in Tempe, Arizona.

3.      At all times relevant to this Complaint, the Company was a corporation in Arizona, and was authorized to conduct, and was conducting, business in the State of Arizona.

4.      The Company hired Ms. Frost as a Word Processor on or about October 9, 2000.

5.      At the time of her termination on or about January 28, 2020, Ms. Frost was a Claim Specialist in the Enterprise Claim Review Group.

6.      The Company employs 15 or more employees.

7.      The Company is not exempt from the Americans with Disabilities Act of 1990, or as amended ("ADA" or "ADAAA").

8.      The Company is an employer as defined in the ADA.

9.      Ms. Frost was an employee as defined in the ADA.

10.      Ms. Frost filed a Charge of Discrimination against the Company with the EEOC and Arizona Civil Rights Division ("ACRD") on or about March 12, 2020.  *See* Charge No. 540-2020-01346, attached as Exhibit 1.

11.     On December 11, 2020, the EEOC issued Ms. Frost a Notice of Right to Sue, attached as Exhibit 2.

12.     On October 13, 2020, the ACRD issued Ms. Frost a Notice of Right to Sue, attached as Exhibit 3.

13.     Ms. Frost's Complaint has been filed within 90 days from receipt of authorization to bring a civil action.

14.     Ms. Frost has exhausted her administrative remedies.

15.     Jurisdiction and venue are appropriate in this Court.

### Car Accident and Consequences

16.     On August 12, 2017, Ms. Frost was in a devastating car accident that resulted in a moderate traumatic brain injury ("TBI") and post-concussion syndrome.

17.     As a result of these conditions, Ms. Frost has difficulty multi-tasking, retaining information, concentrating, and gets sensory overload easily from lights, sounds, and movement.

18.     To complicate matters even more, Ms. Frost also suffers from Multiple Sclerosis and uses a cane from time to time, making it challenging to walk.

19.     At the time of the car accident, Ms. Frost was employed as a claim specialist handling homeowners' claims.

20.     She took the necessary time off to recover from her accident and transitioned slowly back to full-time work.

21.     Once back full time, Ms. Frost had difficulty multi-tasking, which caused her workload to backup, leading additional stress that would make her physically ill.

22.     Because of the TBI, Ms. Frost is substantially limited in her ability to see, read, memorize material, listen and take notes / type at the same time, and to speak at times. She also developed severe sensitivities to light and sound that exposure to causes debilitating headache and optical migraines.

23.     Ms. Frost discussed this with HR and in July of 2018, it was agreed that she should be transferred into another role that required less computer work.

**HR's Good Intention Turns Sour**

24.     On or about December 3, 2018, HR reassigned Ms. Frost to a claim specialist role handling automobile policies.

25.     The pay was less than her previous position, but admittedly Ms. Frost did not have any experience with automobile claims and was just grateful to have a new role.

26.     When HR was telling Ms. Frost about the new job, the HR representative mentioned that the hiring manager, Trisha Leija, did not want to hire her but she did not have a choice since HR was making the decision.

27.     Ms. Leija made it clear to Ms. Frost that she was not pleased with this decision as she was cold and standoffish to Ms. Frost from the beginning.

28.     Ms. Frost self-trained on automobile policies during her first month in the new role.

29.     The last few weeks in January 2019, training for the new position was conducted over the telephone and it was difficult for Ms. Frost to keep up with it because of the TBI symptoms.

30.     Ms. Frost repeatedly told Ms. Leija about the TBI and it hindering her ability to train and learn as quickly as her colleagues, and she requested additional training.

31.     At the end of January, 2019, Ms. Frost was given a few additional hours of training but Ms. Leija refused to allow Ms. Frost to ask any questions.

**Call for Help Goes Unanswered**

32.     After receiving the additional "training," Ms. Leija started reviewing more of Ms. Frost's claims than her colleagues, would call her out for bad examples in front of the entire team, and refused to acknowledge the claims Ms. Frost completed correctly.

33.     This prompted Ms. Frost to request more training, which Ms. Leija denied stating that Ms. Frost already received more training.

34.     Ms. Leija also reprimanded Ms. Frost if she asked her colleagues questions.

35.     When Ms. Frost complained about the noise level, her sensitivity to it, and inability to focus because of it, Ms. Leija was rude and dismissive, with one occasion telling Ms. Frost to wear earplugs.

36.     On March 29, 2019, Ms. Frost filed a formal accommodation request with Cigna, who handles the Company's FMLA and ADA policies.

37.     Ms. Frost requested, and her medical documentation supported, that she be allowed (a) intermittent leave up to 4 days a month; (b) additional one-on-one training with her mentor (Leija) and both positive and negative feedback; and (c) the ability to work from home on days with a planned fire alarm as the sounds, lights, and crowds exacerbate her symptoms.

38.     As part of the approval process, HR asked Ms. Leija if Ms. Frost's requests could be accommodated.

39.     On April 2, 2019, Ms. Frost went to HR and filed a formal complaint against Ms. Leija for singling her out and refusing to accommodate her.

40.     In her complaint, Ms. Frost indicated that she did not want to make a formal complaint at that time in fear of retaliation.

**Clear Cut Retaliation**

41.     Any time Ms. Frost asked Ms. Leija a question after her complaint, Ms. Leija would reply in a condescending tone, "we already discussed this before" or "don't you remember?"

42.     It was not until April 18, 2019 that Ms. Leija responded to HR, and only approved 1 day of intermittent leave per month and the ability to work from home on planned fire alarm days.  She simply ignored the request for additional training.

43.     No alternative accommodation options were offered and Ms. Leija told Ms. Frost that she denied the training because it was an undue hardship, but could not say why.

44.     That same day, Ms. Frost had her monthly evaluation with Ms. Leija, and Ms. Frost was written up for performance issues and discussing her disability with her coworkers because it allegedly made them uncomfortable.

5

45.     Ms. Frost was also instructed to bring any issues directly to Ms. Leija, not coworkers or HR.

46.     On April 19, 2019, Ms. Frost asked Ms. Leija if she could work from home on days she did not feel well from sensory overload.

47.     Ms. Leija told Ms. Frost she would have to call her on the mornings she did not feel well and seek approval then, despite her coworkers being allowed to work from home whenever they requested, without having to call Ms. Leija the morning of.

48.     On May 9, 2019, nearly a month after her HR complaint, Ms. Frost was issued a termination warning for job performance. Ms. Frost again indicated she needs more training and it was denied again by Ms. Leija. Ms. Frost asked if she could train on her own time, and this was also denied by Ms. Leija.

49.     On May 14, 2019, Ms. Frost emailed HR ADA team asking what her next options were to get additional training.

50.     HR ADA Team notified Ms. Leija on May 15, 2019, asking her to discuss Ms. Frost's alternative solution for additional training.

51.     Again, Ms. Leija initially denied this request but eventually approved one day of solo training for Ms. Frost in June.

52.     Ms. Leija warned Ms. Frost this was the last time she would be permitted to do this.

53.     After her solo day of training in June, Ms. Frost's performance began to improve but it proved to be too little, too late.

54.     Ms. Leija started writing Ms. Frost up for various minor reasons.

55.     One of these write ups included a security violation for backing into a parking spot, which Ms. Leija claimed she had to write Ms. Frost up for it because Ms. Frost discussed the matter of receiving an email from security with a coworker.

56.     Notably, Ms. Frost had been complaining to the Company's security department since 2018 that the parking lot lacked sufficient lighting and handicapped spaces.

57.     Further, none of Ms. Frost's colleagues had heard of this policy or had been disciplined for backing up into a parking space or for discussing company policies.

58.     On July 31, 2019, Ms. Frost was removed from her position, citing performance issues.

59.     HR agreed to help Ms. Frost find another position but when Ms. Frost inquired about different job openings she was qualified for, the Company denied them all.

60.     Desperate to keep her medical benefits, Ms. Frost applied for short-term disability in August of 2019.

61.     It was not until December 13, 2019 that Ms. Frost was notified that only two months of short-term disability was approved.

62.     Ms. Frost received a Return to Work Letter dated December 16, 2019, from Ms. Leija saying she could appeal the short-term disability denial or return to work by December 30, 2019.

63.     Believing she had been removed from her position, Ms. Frost contacted Ms. Leija about returning to work and Ms. Leija asked her if she could perform the job with or without accommodations.

64.     Ms. Frost stated she could with additional training, which Ms. Leija again maintained was an undue hardship.

65.     Not having a position to return to and the Company refusing to accommodate her and/or place her in another department, Ms. Frost was terminated on January 28, 2020.

**Allegations Concerning Damages**

66.     Ms. Frost was a qualified employee who suffered from disabilities under the ADA.

67.     Ms. Frost requested an accommodation, on various occasions.

68.     Defendant did not engage in the interactive process.

69.     Instead, the Defendant would finally partially accommodate Ms. Frost, and only after she repeatedly requested it, from her supervisor and HR.

70.     The Defendant singled Ms. Frost out, in front of her peers, made offensive comments about Ms. Frost's medical condition, and disciplined her for incidents that other employees were not disciplined for.

71.     Defendant terminated Ms. Frost because of her disability and its refusal to engage in the interactive process with her.

72.     As a result of Defendant's actions and additional stress, Ms. Frost's medical condition worsened.

73.     Ms. Frost's termination has also deprived her of a health insurance policy that she was relying on for continued medical treatment, forcing her to purchase an expensive marketplace plan that would cover all her specialists and daily medications.

74.     Ms. Frost's termination eliminated her future income and resulted in a loss of wages and retirement benefits.

75.     Ms. Frost's termination, disability and the resulting stress, has made finding replacement employment difficult.

76.     Ms. Frost has suffered emotional distress, lost wages, and compensatory damages as a result of Defendant's actions – both before and because of her termination.

## LEGAL CLAIMS

### Count One:  ADA Discrimination

77.     Plaintiff reincorporates allegations in paragraphs 1-76, as well as the Introduction, as if fully set forth here.

78.     At all relevant times, Ms. Frost had an impairment that substantially limited one or more life activities.

79.     Ms. Frost's TBI and MS, the treatment for it, and the long-term effects of both substantially affected her life activities, including walking, seeing, standing, memorizing, concentrating, driving, and speaking at times.

80.     Ms. Frost's condition was not singular, nor temporary, and has no beginning and ending points.

81.     Ms. Frost continues to be treated by physicians for these conditions; and that treatment has no targeted end date as her conditions are incurable.

82.     At all relevant times, Ms. Frost was qualified to perform the essential functions of her job with or without a reasonable accommodation.

83.     Ms. Frost did, in fact, have a qualifying disability pursuant to the ADA.

84.     The Company knew of Ms. Frost's conditions.

85.     The Company also regarded her as disabled and treated her as such.

86.     Ms. Frost made requests for accommodations.

87.     Defendant unilaterally partially granted those requests, but never had a discussion with Ms. Frost about the partial denial or if other options were available.

88.     The Company failed to engage in the interactive process and/or falsely claimed undue hardship.

89.     The Company terminated Ms. Frost because of her disability and her need for an accommodation.

90.     Ms. Frost is entitled to back pay, front pay, compensatory damages, punitive damages, and her reasonable attorneys' fees and costs.

## Count Two:  ADA Retaliation

91.     Ms. Frost reincorporates allegations in paragraphs 1-90, as well as the Introduction, as if fully set forth here.

92.     Ms. Frost had a qualifying disability.

93.     The Company regarded her as being disabled and treated her as such.

94.     Ms. Frost engaged in protected activity when she requested accommodations for that disability and complained about her supervisor's discriminatory conduct.

95.     Defendant terminated Ms. Frost for engaging in protected activity.

96.     Ms. Frost is entitled to back pay, front pay, compensatory damages, punitive damages, and her reasonable attorneys' fees and costs.

## Conclusion

**THEREFORE**, Ms. Frost respectfully requests the following relief:

A.  A judgment in her favor against the Defendant;

B.  An award of back pay, front pay, and compensatory damages;

C.  Injunctive relief against the Company to prohibit future violations of the ADA;

D.  Pre- and post-judgment interest on award;

E.  Punitive damages;

F.  Reasonable attorneys' fees and costs; and

G.  All other appropriate equitable relief.

**DATED** this 8th day of January, 2021.


**The Foster Group, PLLC**


Troy P. Foster
Megan Weides
902 W. McDowell Road
Phoenix, Arizona 85007
*Counsel for Plaintiff*

# EXHIBIT 1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [ ] FEPA<br>[X] EEOC | 540-2020-01346 |

| ARIZONA ATTORNEY GENERAL'S OFFICE, CIVIL RIGHTS DIVISION | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| **SANDY FROST** | **(360) 789-3118** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **2529 WEST MONTEREY AVENUE,  MESA, AZ 85202** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others.  (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| **STATE FARM INSURANCE** | **Unknown** | |

| Street Address | City, State and ZIP Code |
|---|---|
| **80 RIO SALADO PKWY,  TEMPE, AZ 85281** | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN
[X] RETALIATION  [ ] AGE  [X] DISABILITY  [ ] GENETIC INFORMATION
[ ] OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **12-01-2019**   Latest **02-04-2020**

[ ] CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

In or around October 2000, I was hired by Respondent. My most recent position was a Claim Specialist.

In or around December 2018, I relocated to a new position and requested additional training due to my disability, my request which was denied. I began to be subjected to different terms and conditions of employment, when compared to other non-disabled employees.

On or about March 29, 2019, I submitted a reasonable accommodation request, my request was denied.

Beginning on or about April 2, 2019, I began to receive numerous illegitimate disciplinary write-ups.

On or about July 31, 2019, I was released from my position after Respondent failed to accommodate my reasonable accommodation request. Subsequently, I filed for short-term disability.

On or about February 4, 2020, I was terminated.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally signed by Sandy Frost on 03-12-2020 01:56 PM EDT** | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2020-01346 |

| **ARIZONA ATTORNEY GENERAL'S OFFICE, CIVIL RIGHTS DIVISION** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

I believe I was discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended. I further believe I was retaliated against for engaging in a protected activity, requesting a reasonable accommodation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Sandy Frost on 03-12-2020 01:56 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.   FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2.   AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.   PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.   ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.   WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

## NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

## NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# EXHIBIT 2

EEOC Form 161-B (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

| | |
|---|---|
| To:  **Sandy Frost**<br>    **2529 West Monterey Avenue**<br>    **Mesa, AZ 85202** | From:  **Phoenix District Office**<br>      **3300 North Central Ave**<br>      **Suite 690**<br>      **Phoenix, AZ 85012** |

☐  *On behalf of person(s) aggrieved whose identity is*
    *CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **540-2020-01346** | **Jeremy Yubeta,**<br>**Enforcement Supervisor** | **(602) 661-0015** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

☒    More than 180 days have passed since the filing of this charge.

☐    Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will
        be able to complete its administrative processing within 180 days from the filing of this charge.

☒    The EEOC is terminating its processing of this charge.

☐    The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

☐    The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN
        90 DAYS** of your receipt of this Notice. Otherwise, your right to sue based on the above-numbered charge will be lost.

☐    The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge,
        you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

|  |  |
|---|---|
| Enclosures(s) | **Elizabeth Cadle,**<br>**District Director** |
| | **12/11/2020**<br>*(Date Mailed)* |

cc:    **John Kim**                                                                    **Megan Weides, Esq.**
        **Legal Counsel**                                                          **THE FOSTER GROUP**
        **STATE FARM INSURANCE**                                      **902 W. McDowell Rd.**
        **One State Farm Plaza, B3**                                    **Phoenix, AZ 85007**
        **Bloomington, IL 61710**

Enclosure with EEOC
Form 161-B (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS   --   Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA),**
**the Genetic Information Nondiscrimination Act (GINA), or the Age**
**Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should keep a record of this date. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Courts often require that a copy of your charge must be attached to the complaint you file in court. If so, you should remove your birth date from the charge. Some courts will not accept your complaint where the charge includes a date of birth. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 -- *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice **and** within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do not relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, please make your review request **within 6 months** of this Notice. (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):** The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.

➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities"** now **include the operation of major bodily functions,** such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

➤ **Only one** major life activity need be substantially limited.

➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active.**

➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months.**

**"Regarded as" coverage:**

➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

➤ **"Regarded as"** coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.

➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability.* For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2020-01346 |

| ARIZONA ATTORNEY GENERAL'S OFFICE, CIVIL RIGHTS DIVISION | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone | Year of Birth |
|---|---|---|
| SANDY FROST | (360) 789-3118 | |

| Street Address | City, State and ZIP Code |
|---|---|
| 2529 WEST MONTEREY AVENUE, MESA, AZ 85202 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| STATE FARM INSURANCE | Unknown | |

| Street Address | City, State and ZIP Code |
|---|---|
| 80 RIO SALADO PKWY, TEMPE, AZ 85281 | |

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☒ RETALIATION ☐ AGE ☒ DISABILITY ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| 12-01-2019 | 02-04-2020 |
| ☐ CONTINUING ACTION | |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

In or around October 2000, I was hired by Respondent. My most recent position was a Claim Specialist.

In or around December 2018, I relocated to a new position and requested additional training due to my disability, my request which was denied. I began to be subjected to different terms and conditions of employment, when compared to other non-disabled employees.

On or about March 29, 2019, I submitted a reasonable accommodation request, my request was denied.

Beginning on or about April 2, 2019, I began to receive numerous illegitimate disciplinary write-ups.

On or about July 31, 2019, I was released from my position after Respondent failed to accommodate my reasonable accommodation request. Subsequently, I filed for short-term disability.

On or about February 4, 2020, I was terminated.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| Digitally signed by Sandy Frost on 03-12-2020 01:56 PM EDT | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 540-2020-01346 |

| ARIZONA ATTORNEY GENERAL'S OFFICE, CIVIL RIGHTS DIVISION | and EEOC |
|---|---|
| *State or local Agency, if any* | |

I believe I was discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended. I further believe I was retaliated against for engaging in a protected activity, requesting a reasonable accommodation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally signed by Sandy Frost on 03-12-2020 01:56 PM EDT** | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

# EXHIBIT 3



**OFFICE OF THE ARIZONA ATTORNEY GENERAL**

MARK BRNOVICH
ATTORNEY GENERAL

CIVIL LITIGATION DIVISION
DIVISION OF CIVIL RIGHTS SECTION

REBEKAH BROWDER
CHIEF COUNSEL

# NOTICE OF RIGHT TO SUE

Sandy Frost                 v.                 State Farm Insurance

CRD No.:                                        EEOC No.: 540-2020-01346C

On March 12, 2020, you filed a charge with the Division of Civil Rights Section alleging employment discrimination.  Arizona law provides that you may bring a civil action in Superior Court of the county where the alleged discriminatory action took place.  Should you decide to file a civil action, you must do so *within 90 days* of the date you receive this Notice or *within one year* of the date you filed the charge, *whichever comes first*, A.R.S. § 41-1481(D.)

*This Notice of Right to Sue letter is being issued because:*

Charging Party has submitted a written request

If you have any questions concerning this notice, please contact us at (520) 628-6500 or toll free at 1-877-491-5740. If you need legal assistance, you should seek the advice of an attorney.

BY:

Patricia G. Bianchi, Compliance Manager

Sent by regular mail this 13th day of October, 2020

cc: State Farm Ins (Respondent)

2005 NORTH CENTRAL AVENUE, PHOENIX, AZ 85004  •  602.542.5263
400 WEST CONGRESS, SOUTH BUILDING, SUITE S-315, TUCSON, AZ 85701  •  520.628.6500
WWW.AZAG.GOV



Select Language

Powered by Google **Translate**

# Civil Court Case Information – Case History

## Case Information

| | | | |
|---|---|---|---|
| Case Number: | CV2021-000326 | Judge: | Duncan, Sally |
| File Date: | 1/8/2021 | Location: | Downtown |
| Case Type: | Civil | | |

## Party Information

| Party Name | Relationship | Sex | Attorney |
|---|---|---|---|
| Sandy Frost | Plaintiff | Female | Troy Foster |
| State Farm Mutual Automobile Insurance Company | Defendant | | Pro Per |

## Case Documents

| Filing Date | Description | Docket Date | Filing Party |
|---|---|---|---|
| 1/21/2021 | AFS - Affidavit Of Service | 1/25/2021 | |
| **NOTE:** Certificate of Service by Private Process server - STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY | | | |
| 1/8/2021 | COM - Complaint | 1/8/2021 | |
| **NOTE:** Complaint | | | |
| 1/8/2021 | CSH - Coversheet | 1/8/2021 | |
| **NOTE:** Civil Cover Sheet | | | |
| 1/8/2021 | CCN - Cert Arbitration - Not Subject | 1/8/2021 | |
| **NOTE:** Certificate Of Compulsory Arbitration - Is Not Subject To | | | |
| 1/8/2021 | SUM - Summons | 1/8/2021 | |
| **NOTE:** Summons | | | |

## Case Calendar

**There are no calendar events on file**

## Judgments

**There are no judgments on file**